**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** )  )  ) | **CIVIL ACTION NO.:** |
| **Plaintiff,** )  ) | **3:10-cv-00540-WHB –LRA** |
| **v.** )  ) | |
| **PERFORMANCE DRILLING COMPANY, LLC,** )  )  ) | |
| **Defendant.** ) | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF EEOC'S MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c)(1), the Equal Employment Opportunity Commission (hereinafter, the "Commission" or "EEOC"), respectfully moves this Honorable Court to issue a protective order striking Defendant's Interrogatories  1, 2, 3, 4, and 8, and striking Defendant's Requests for Production of Documents 2, 3, 4, 5, 6, and 7.  The Commission respectfully asks the Court to enter a protective order barring Defendant Performance Drilling Company, LLC (hereinafter "Defendant" or "Performance Drilling") from seeking testimony from the EEOC or any other witness regarding the topics listed in Exhibit C, and bar the Defendant from deposing the EEOC or any of its employees regarding this matter.

### I.      Factual Background

In this case, the Commission alleges that Performance Drilling violated Title VII by subjecting Mr. Darius Swington to racial harassment.   Mr. Swington began working for Performance Drilling on June 18, 2007 as a floorman on one of its land drilling rigs located in Rankin County, Mississippi. Mr. Swington was part of a five-man drilling crew and lived and

slept in a shared trailer with his own and another crew. During his employment, Mr. Swington was the only Black employee. Mr. Swington quickly became the target of racial hostility. For example, after learning that driller Jamie Durr had hired Mr. Swington onto his crew, Vice President of Operations and Superintendant Billy Bunch remarked to Mr. Swington's crewmate, Jonathon Thames, "I don't want no niggers working for this fucking company while I'm superintendent."  During Mr. Swington's employment, Van Johnson, a driller whose crew worked the same days as Mr. Swington's crew, would make racist remarks in Mr. Swington's presence, regularly referring to him as "nigger" and "boy."  In one incident, Mr. Johnson brought a watermelon with a hole cut into it and told Mr. Swington that the watermelon was for Mr. Swington's sexual gratification. On another occasion, Mr. Johnson asked Mr. Swington if he would rather work at Kentucky Fried Chicken, because "that's what your people [blacks] like to eat."  Mr. Johnson regularly referred to blacks as monkeys. When Mr. Swington's crew reported these incidents, Mr. Bunch would only shrug and do nothing.  Mr. Swington complained to his immediate supervisor, but he feared confronting Van Johnson.  The harassment continued.

On July 6, 2007, Mr. Swington and his crew entered the rig to discover a noose hanging from the doorframe of the rig's only entryway. Van Johnson was waiting for them.  When asked to explain the noose, Mr. Johnson stated to Mr. Swington, "Boy, we are going to work you so hard today, that we won't have to hang you. You will want to hang yourself." Mr. Durr called another supervisor to intervene, but that supervisor only laughed at the noose, expressing dismay that anyone could be offended.  The noose was eventually taken down. Later, Van Johnson asked Mr. Durr why he had hired that "nigger."  Following this incident, Performance Drilling fired

Mr. Swington and his entire crew, allegedly for not cleaning their trailer. The Commission

contends that Mr. Swington's termination was Defendant's the final act of harassment.[1]

## II.     Legal Standard

Pursuant to the Federal Rules of Civil Procedure, Rule 26(b)(2)(C), the Court must limit

the extent of otherwise allowable discovery if it determines the following:

> (1)     the discovery sought is unreasonably cumulative or duplicative, or
> can be obtained from some other source that is more convenient, less burdensome,
> or less expensive;

> (2)     the party seeking discovery has had ample opportunity to obtain
> the information by discovery in the action; or

> (3)     the burden or expense of the proposed discovery outweighs its
> likely benefit, considering the needs of the case, the amount in controversy, the
> parties' resources, the importance of the issues at stake in the action, and the
> importance of the discovery in resolving the issues.[2]

On a showing of good cause, the Court may issue an order to protect a party or person

from whom discovery is being sought from annoyance, embarrassment, oppression or undue

burden or expense by, but not limited to, forbidding the discovery, specifying the terms of

discovery, prescribing an alternative discovery method, or, forbidding or limiting inquiry into

certain matters.  Fed.R.Civ.P. 26(c)(1).[3]

## III.     Summary of Argument

The Commission's grounds for objecting to the discovery and depositions and seeking

this protective order are the following:

(1)     The Commission believes that the information, documents, and  testimony which

Defendant seeks includes information that is irrelevant, beyond the scope of discovery, not

---

[1] On apparent instruction by its legal counsel after the charge was filed, the Defendant re-hired Mr. Swington months later for a brief period on a different rig.  The Commission contends that the Defendant mistreated Mr. Swington during this period, and terminated him.
[2] *Catt v. Affirmative Ins. Co., WL 1228605, 2-3 (N.D. Ind. 2009).*
[3] *Catt v. Affirmative Ins. Co., WL1228605, 3 (N.D. Ind. 2009)*

reasonably calculated to lead to the discovery of admissible evidence, and unduly burdensome. Moreover, the information, documents, and testimony sought is privileged, either by statute or pursuant to various privileges, i.e. statutory protection, the deliberative process privilege, or the attorney-client or attorney work product privilege;

   (2)    The appearance of any Commission employee for deposition is wasteful of public resources and places an unnecessary burden upon the agency in the performance of its statutory responsibilities; and,

   (3)    The Defendant will not be prejudiced by the exclusion of this testimony.

### IV.    Specific Objections to Written Discovery

Note that the Commission has limited this motion only to that discovery which is objectionable. Without waiving any applicable objections or privileges, at this time, the EEOC does not ask the Court to strike Interrogatories 6, 7, or 9. Likewise, without waiving any applicable objections or privileges, at this time, the EEOC does not ask the Court to strike Requests 1 or 8. The Commission intends to answer those interrogatories and requests when they are due at the end of this month. Pursuant to L.R. 37(b), the objectionable discovery requests are quoted verbatim below. The Commission's specific objections, grounds, and reasons for moving to strike each of the disputed interrogatories, requests, and deposition topics are set forth below.

### A.  Defendant's Interrogatories 1, 2, 3, 4, 5, and 8

On February 21, 2011, Defendant propounded nine interrogatories. Interrogatories 1, 2, 3, 4, 5, and 8 are objectionable and should be stricken for the reasons stated herein.

    **Interrogatory No. 1:   Identify the person or persons, within the EEOC, who made the decision to file the Complaint in this action.**

**Interrogatory No. 2**:  **Identify the person, or all persons, within the EEOC who made any recommendation regarding the decision to file the Complaint in this action.**

Defendant's Interrogatories 1 and 2 both request the identity of persons who decided to file this lawsuit or who recommended that the lawsuit be filed.  These questions are irrelevant, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. The identity of persons involved in the decision to file suit are not relevant or discoverable inasmuch as the plaintiff's reasoning for bringing his case would not prove or disprove the claims or defenses at issue.  The decision to file suit by a plaintiff necessarily implicates the giving and receiving of legal advice.

Moreover, the government's internal decision and recommendations to file suit and the identities of persons participating in that decision-making process is protected by the deliberative process, attorney client and attorney work product privilege.  "Traditionally, government deliberations have been protected by a variety of qualified privileges in order to promote efficient and effective decision-making which is fueled by the free-flow of information." *In re Bank One Securities Litigation*, 209 F.R.D. 418, 426 (N.D. Ill. 2002) citing, *United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993) (recognizing that the deliberative process privilege, which operated to protect pre-decisional documents created by the Federal Trade Commission, encouraged frank discussion of legal and policy matters).

The deliberative process privilege was designed to protect pre-decisional internal communications from public disclosure.  *Maricopa Audubon Soc. v. United States Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997); and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1972).  The purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions" by ensuring that the "frank discussion of legal or policy matters" within the

agency, is not inhibited by public disclosure.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-151 (1975); see also *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Hopkins v. U.S. Dept. of Housing and Urban Develop.*, 929 F.2d 81, 84 (2nd Cir. 1991) (deliberative process privilege "protects the decision making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions.").

The deliberative process privilege protects staff recommendations or suggestions which reflect the staff member's personal opinions, rather than a statement or announcement of agency policy.  As the D.C. Circuit stated in *Formaldehyde Institute v. Dept. of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989):

> A 'predecisional' document is one prepared in order to assist an agency decision maker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.

See also *Maricopa Audubon*, 108 F.3d at 1093.  As the court explained in *Scott v. PPG Industries, Inc.*, 142 F.R.D. 291, 294 (N.D.W.Va. 1992):

> If the EEOC's investigators, attorneys and other employees knew that their personal notes and observations, and internal communications and critiques would be subject to disclosure in virtually every employment discrimination case, then frank and open communications within the agency would clearly be hindered. This would defeat the very purpose of an agency such as the EEOC.

Prior to litigation, the government engaged in internal deliberations regarding whether to file suit. Evidence and law was evaluated and weighed. Judgments were made about the litigation strategy, prosecutorial theory, and damages to be sought. Such information is protected by the deliberative process privilege and should be protected from discovery.  *Leyh v. Modicon, Inc.*, 881 F.Supp. 420, 425 (S.D. Ind. 1995) (EEOC's decisions and deliberations are protected by the deliberative process privilege).

**Interrogatory No. 3**:  State the number of Complaints filed by the EEOC in a district court within the past three years on behalf of a single individual.

**Interrogatory No. 4**:  For each Complaint described in Interrogatory No. 3, state the number of those instances in which the alleged victim of discrimination was disqualified for any reason, including failure to timely submit a claim to a bankruptcy court, from filing his or her own Complaint in his or her own name.

Interrogatory 3 and 4 both seek details regarding unrelated litigation by the Commission in courts across the country.  This information is irrelevant to the claims and defenses. The number of Commission complaints has no bearing on whether Performance Drilling is liable for violating Title VII.  EEOC's litigation and enforcement statistics are publicly available on the Commission's website.  It is unduly burdensome for the Commission to search court records to determine which of its complaints filed in the last three years were filed only on behalf on individual claimants rather than on behalf of a class. It is unduly burdensome to require the Commission to cull the bankruptcy records across the country to determine if a bankruptcy was filed or if the individual filed a proof of claim.  None of this information is pertinent to the facts in this case. Interrogatories 3 and 4 should be stricken.

**Interrogatory No. 5**:  State the total number of EEOC Charges filed with the EEOC by Darius Swington.

The number of charges that Darius Swington has filed, or not filed, with the EEOC in the course of his working life is irrelevant, overbroad, and harassing.  If Mr. Swington filed a hundred charges or only this one, that fact would not prove or disprove that Performance Drilling is liable in this case.  More importantly, the Commission is barred by statute from disclosing the existence or content of charges which do not result in litigation.

Section 709(e) of Title VII makes it:

"unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this title involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $ 1,000, or imprisoned not more than one year."
42 USC § 2000e-8.

This information is barred from disclosure by statute.  It is irrelevant to either party's claims or defenses.  This interrogatory should be stricken.

**Interrogatory No. 8**:  Identify all persons by name, address, and telephone number, who were interviewed or contacted by any representative of the EEOC in conjunction with the filing of Charge No. 423-2007-02703 by Darius Swington, whether or not the interview or contact was memorialized in any manner.

Interrogatory 8 is an improper attempt to go behind the investigation. This information is irrelevant and harassing as it seeks to challenge the underlying EEOC investigation. However, the investigation preceding this lawsuit is not relevant to the claims or defenses at issue. The "nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency." *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). See  *EEOC v. Food &Commercial Workers Local 1105*, 1988 WL 141558, *1 (D. Or. 1988)("allegations of misconduct on the part of the EEOC and/or its director in arriving at a reasonable cause decision are insufficient as a matter of law to state an affirmative defense to a Title VII action."); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) ("error for the district court to inquire into the sufficiency of the Commission's investigation."); *EEOC v. E.I. DuPont,* 373 F. Supp. 1321, 1338 (D.Del. 1974), *aff'd*, 516 F.2d 1297 (3d Cir. 1975) (Congress did not intend for the courts to test the factual basis for Commission action).


As one court explained in the context of a similar request in a Title VII case:

> "[Defendant's] Motion asks this Court to look behind EEOC's express finding of broad-scale discrimination to decide whether EEOC had any reasonable basis for making that finding.  Such an endeavor is conceptually and procedurally unsound. That line of inquiry would deflect the efforts of both the court and the parties from the main purpose of the litigation: to determine whether [Defendant] has actually violated Title VII.  Acceptance of [Defendant's] theory would entitle every Title VII defendant to litigate as a preliminary matter whether the EEOC had a reasonable basis for its determination…[That theory] would effectively make every Title VII suit a two-step action: First the parties would litigate the question of whether EEOC had a reasonable basis for its initial findings, and only then would the parties proceed to litigate the merits of the action."

The Commission will produce responsive non-privileged documents contained in the investigative file.  To the extent that interviews or witness contacts were made they will be documented in the file and the documents speak for themselves.  Defendant's inquiry into the method and strategy of the investigation is beyond the scope of discovery, irrelevant, and should be stricken.

### B.    Defendant's Requests for Production 2, 3, 4, 5, 6, and 7

On February 21, 2011, Defendant propounded eight requests for production.[4] As noted above, the Commission will produce non-privileged documents in response to   For many of the reasons previously stated, six of Defendant's eight requests for documents are improper, harassing, unduly burdensome, are not reasonably calculated to lead to the discovery of admissible evidence, and seek irrelevant information that is privileged and protected from disclosure.  Plaintiff asks the Court to strike the objectionable requests.

**<u>Request No. 2</u>:  Produce the entire file(s) compiled or maintained by the EEOC as a result of the filing of any Charge by Darius Swington other than Charge No. 423-2007-02703.**

Defendant's request seeks information about other potential respondents, who would be third parties in this case.  If Mr. Swington had filed a charge against another employer, that

---

[4] Without waiving any applicable objections or privileges, at this time, the EEOC does not ask the Court to strike Requests 1 or 8.

information would not be discoverable by Performance Drilling.  Responsive documents are protected by statute as noted above. Section 709(e) of Title VII forbids the Commission from disclosing the existence and contents of a charge file to the public. The statute protects any charge in which Performance Drilling was not a party. Importantly, there is no value to these documents.  If Mr. Swington had filed charges against another employer it would necessarily have involved different facts and witnesses, and possibly entirely different claims.  There is no relevant evidence to be gained from such documents.  This request should be stricken.

> **Request No. 3**:  Produce all written internal communications, both physical and electronic, within the EEOC which discuss, at any level of detail, the relative merits of Charge 423-2007-02703.
> **Request No. 4**:  Produce all written internal communications, both physical and electronic, within the EEOC which discuss, at any level of detail, the reasons the Complaint in this action should or should not be filed by the EEOC
> **Request No. 5**:  Produce all EEOC internal guidelines or regulations which govern the EEOC's decision to file a Complaint in a district court on behalf of an alleged victim or victims of discrimination.

Defendant's Requests 3, 4, and 5 expressly seek written "internal" communications within the government regarding the merits of filing suit and the government's pre-decisional, pre-litigation evaluation of this case. The reasons for filing suit are simply not relevant to the ultimate question in this case – whether Performance Drilling is liable for racial harassment. Internal communications regarding the reasons for or against the government's action are exactly the type of pre-decisional documents and communications that are protected by the deliberative process privilege. See e.g., *In re Bank One Securities Litigation*, 209 F.R.D. 418, 426 (N.D. Ill. 2002) (government deliberations have traditionally been protected by a variety of privileges in order to promote efficient and effective decision-making); *Leyh v. Modicon, Inc.*, 881 F.Supp. 420, 425 (S.D. Ind. 1995) (testimony concerning EEOC's decisions or deliberations concerning its investigations are protected by the deliberative process privilege); *EEOC v. Fina Oil & Chem.*

*Co.*, 145 F.R.D. 74, 75 (D. Tex. 1992) (deliberative and policy making processes of the government are protected by the deliberative process privilege). To the extent those communications included legal advice sought or given within the Commission they are protected by the attorney-client and attorney work product privileges.  These requests are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The Commission respectfully asks the court to strike Requests 3, 4, and 5.

> **<u>Request No. 6</u>:  Produce all EEOC internal guidelines or regulations which govern the EEOC's determination of damages to be sought on behalf of an alleged victim or victims of discrimination.**

Defendant's Request 6 t is overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and seeks irrelevant information. This request not only implicates the Commission's prosecutorial theory in this case, but also in every case it has ever filed or ever will file. The Commission's "determination" of what damages to seek for which victims is protected by the deliberative process privilege.  The recommendations and reasons for or against seeking certain damages and the amounts that will be proposed or sought involve legal evaluation and advice.   This is necessarily protected by the deliberative process privilege, attorney client privilege, and the attorney work product privilege.  The EEOC's authority to recover damages is contained in Title VII and interpretive case law.  See 42 USCS § 1981a. The Defendant is not entitled to discover the Commission's internal processes and communications and cannot demonstrate that such information is relevant in any way to the damages that may be sought in this case.  Request 6 should be stricken.

**Request No. 7:  Produce all Charges filed with the EEOC within the three years prior to the filing of Charge 423-2007-02703 in which an oil or gas field worker charged that a hangman's noose was displayed or referred to in the work area.**

Defendant's Request 7 request is overbroad and irrelevant.  As noted above, the EEOC is barred by statute from disclosing the existence or content of charges which do not result in litigation.  The Commission is further barred from disclosing the charge information of third parties to either a charging party or a respondent. As a practical matter, it would be impossible to know this answer without reviewing each and every one of the 230,000 charges filed in the three years preceding Mr. Swington's charge. This request is unduly burdensome and not reasonably calculated to lead to the discovery of admissible or relevant evidence.  Request No. 7 should be stricken.

## IV.     Specific Objections to Defendant's Request to Depose EEOC

Performance Drilling requested to take the deposition of the EEOC pursuant to Rule 30(b)(6).  Performance Drilling provided EEOC with a list of proposed topics.  These topics are:

1. The reasons for the decision by the EEOC to file the Complaint in this action.

2. The investigation conducted by the EEOC prior to filing the Complaint herein, including all interviews of persons conducted in conjunction with the investigation.

3. The identity of the person or persons, within the EEOC, who made the decision to file the Complaint in this action.

4. The identity of all persons, within the EEOC, who made recommendations for or against the filing of the Complaint in the present action by the EEOC.

5. The content of the recommendations for or again the filing of the Complaint in the present action.

6. Written internal communications, both physical and electronic, within the EEOC which discuss, at any level of detail, the relative merits of Charge 423-2007-02703.

7. Written internal communications, both physical and electronic, within the EEOC which discuss, at any level of detail, the reasons the Complaint in this action should or should not be filed by the EEOC.

8. Written internal communications, both physical and electronic, within the EEOC which discuss, at any level of detail, the position of the EEOC on filing a Complaint where the Charging Party has failed to timely submit a claim to a bankruptcy court after the employer filed a petition in bankruptcy.

9. Written internal communications, both physical and electronic, within the EEOC which discuss, at any level of detail, the position of the EEOC on filing the Complaint in this action in view of the fact that Darius Swington failed to timely submit a claim to a bankruptcy court after the defendant filed its petition in bankruptcy.

10. The number of Complaints filed by the EEOC in a district court within the past three years on behalf of a single individual.

11. The number of those instances in which the alleged victim of discrimination was disqualified from filing his or her own Complaint in his or her own name by reason of a failure to timely submit a claim to a bankruptcy court.

12. All EEOC Charges filed with the EEOC by Darius Swington.

13. The file(s) compiled or maintained by the EEOC as a result of the filing of Charge 423-2007-02703 by Darius Swington.

14. The file(s) compiled or maintained by the EEOC as a result of the filing of any Charge by Darius Swington other than Charge No. 423-2007-02703.

15. All EEOC internal guidelines or regulations which govern the EEOC's decision to file a Complaint in a district court on behalf of an alleged victim or victims of discrimination.

16. All EEOC internal guidelines or regulations which govern the EEOC's determination of damages to be sought on behalf of an alleged victim or victims of discrimination.

17. All Charges filed with the EEOC within the three years prior to the filing of Charge 423-2007-02703 in which an oil or gas field worker charged that a hangman's noose was displayed or referred to in the work area.

Federal Rule of Civil Procedure Rule 26(b)(2)(C) requires that a protective order be issued if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the

importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. The topics proposed by Performance Drilling do not seek clarification of matters in the administrative file, but general knowledge about the agency's internal processes, deliberations, and evaluation of the facts of this case.

The deposition proceeding itself would be an undue burden on the agency.  The value of the information sought is small to insignificant. The Commission has no first hand or personal knowledge of the events in this case.  All of the factual allegations in this case preceded the filing of the charge and therefore preceded any involvement by the Commission in this matter. The burden that would be created by this deposition is of critical importance to the Equal Employment Opportunity Commission.  It is one of the nation's smallest agencies, and is currently charged to process and investigate thousands of charges filed with the agency and related state agencies.  The Commission serves a vital function of providing charge advice on thousands of inquiries that never become charges or become litigation. Thus, every manpower hour is precious to the Commission.  If the Commission were required to submit its employees to testify in even a small percentage of the cases brought, the cumulative loss of manpower hours necessary to comply with requirements of such subpoenas would hamper the Commission's efforts to perform its basic statutory duties.  The ultimate harm would be felt by those individuals who file charges with the Commission and would suffer unnecessary delays in the processing of their cases. The Commission objects to Defendant's request to depose the agency in any circumstance.

Moreover, as detailed below, many of the topics invade the deliberative process, attorney client, and attorney work produce privileges.  Defendant should be barred from deposing the Commission.

**Topics 1, 2, 3, 4, 5, 6, 7, 8, 9, 13, 14, 15, 16** are improper as each topic expressly seeks to discover **internal** deliberations and **evaluation** of the case.  As supported in the case law cited above, the government's internal decision making process, its decision to file this case, and all related communication are protected by the deliberative process privilege, and the attorney client privilege. See e.g., *In re Bank One Securities Litigation*, 209 F.R.D. 418, 426 (N.D. Ill. 2002) (government deliberations have traditionally been protected by a variety of privileges in order to promote efficient and effective decision-making); *Leyh v. Modicon, Inc.*, 881 F.Supp. 420, 425 (S.D. Ind. 1995) (testimony concerning EEOC's decisions or deliberations concerning its investigations are protected by the deliberative process privilege);  *EEOC v. Fina Oil & Chem. Co.*, 145 F.R.D. 74, 75 (D. Tex. 1992) (deliberative and policy making processes of the government are protected by the deliberative process privilege).

The reasons for or against filing suit are irrelevant to the substantive claims and defenses at issues.  Neither Plaintiff or Defendant could gain information to support the prosecution or defense of this case.  There are no grounds to permit Defendant broad testimony on the internal workings of the agency or its analysis and evaluation in bringing this lawsuit.  This subject implicates internal communications between EEOC investigators and attorneys, and would require the Commission to offer testimony regarding how it reached its decision to issue its Determination finding discrimination in this investigation.  The deponent would have to disclose, either directly or indirectly, information about the Commission's analysis, advice, and recommendations in assessing the evidence in the investigation and which facts it weighed in favor of its ultimate determination.   Such inquiry is improper, violates established privilege, and exceeds the scope of discovery.

Additionally, **Topic 2**, "the investigation conducted by the EEOC prior filing the complaint herein, including all interviews of persons conducted in conjunction with the investigation," is irrelevant to the degree it seeks to challenge the underlying EEOC investigation. The "nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency." *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). See  *EEOC v. Food &Commercial Workers Local 1105*, 1988 WL 141558, *1 (D. Or. 1988)("allegations of misconduct on the part of the EEOC and/or its director in arriving at a reasonable cause decision are insufficient as a matter of law to state an affirmative defense to a Title VII action."); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) ("error for the district court to inquire into the sufficiency of the Commission's investigation."); *EEOC v. E.I. DuPont,* 373 F. Supp. 1321, 1338 (D.Del. 1974), *aff'd*, 516 F.2d 1297 (3d Cir. 1975) (Congress did not intend for the courts to test the factual basis for Commission action).

Further objecting, **Topic 10**, "the number of Complaints filed by the EEOC in a district court within the past three years on behalf of a single individual" is also irrelevant, unduly burdensome, and harassing. The EEOC's litigation and enforcement statistics are publicly available and Plaintiff cannot be required to cull through court records to determine which cases involve a single individual rather than a class.  This information has no bearing on the claims or defenses at issue and thus, the burden on the agency to collect it is not warranted.

**Topic 11,** "the number of those instances in which alleged victim of discrimination was disqualified from filing his or her own Complaint in his or her own name by a reason of failure to timely submit a claim to a bankruptcy court," does not seek relevant information.  It also is vague, overbroad, and harassing.  It would be impossible to determine this answer without also

culling through numerous court records across the country. This request would impose an undue burden on the Commission to obtain information that is of zero value in this case.

Topic 12 and Topic 14, "All EEOC Charges filed with the EEOC by Darius Swington" and "The file(s) complied by EEOC as a result of any Charge filed by Swington other than Charge 423-2007-02703."   These topics are irrelevant, overbroad and harassing.   As noted above, Section 709(e) of Title VII bars the EEOC from disclosing the existence or content of charges which do not result in litigation.  Even if the Commission were not statutorily prohibited from disclosure, the facts surrounding the filing and investigation of charges that Mr. Swington may or may not have filed against other employers is not relevant to the hostile work environment he suffered at Performance Drilling.

Topic 13, "The file(s) compiled or maintained by the EEOC as a result of filing of Charge 423-2007-02703 by Darius Swington," is vague, overbroad, irrelevant, and harassing. The request potentially violates the attorney-client and deliberative process privileges.  At the time of proposing this topic, the Defendant had not and still has not seen the charge file because the EEOC's responses to document requests are not yet due.  Non-privileged documents responsive will be produced and will speak for themselves. It is unduly burdensome and wasteful to require a Commission employee to testify to subjects that are readily apparent from the fact of the documents, particularly where no EEOC employee has personal knowledge of the facts in the case.

Topic 15, "All EEOC internal guidelines or regulations which govern the EEOC's decision to file a Complaint in a district court on behalf of an alleged victim or victims of discrimination," is vague, irrelevant, overbroad, and harassing. As noted above, information regarding the Commission's internal deliberations and policy making processes are protected by

the deliberative process privilege.  The deliberations, recommendations, and decision to file suit

is also protected by the attorney-client and attorney work product privilege. In order to testify in

this topic area, the deponent would have to reveal the Commission's prosecutorial theory in this

lawsuit. Numerous courts have recognized that under these circumstances the party seeking the

Rule 30(b)(6) deposition was, in effect, improperly seeking the testimony of opposing counsel.

See *FTC v. U. S. Grant Resources, LLC*, 2004 WL 1444951, at *8 (E.D. La. Jun. 25, 2004)(Rule

30(b)(6) deposition of FTC improper given that FTC attorneys and persons working under their

direction conducted investigation that was subject of deposition noticed)(unpublished); SEC v.

Buntrock, 217 F.R.D. 441, 444 (N.D. Ill. 2003)(holding same for SEC); EEOC v. HBE Corp.

157 F.R.D. 465, 466 (E.D. Mo. 1994) (same regarding EEOC); U.S. v. Dist. Council of New

York City, No. 90 Civ. 5722 (CSH), 1992 WL 208284, at *5-6, 10 (S.D. N. Y. Aug. 18, 1992)

(same regarding DOJ).

 **Topic 16,** "All EEOC internal guidelines or regulations which govern the EEOC's

determination of damages to be sought on behalf of an alleged victim or victims of

discrimination," is vague, irrelevant, overbroad, and harassing. This implicates the

Commission's prosecutorial theory in this case and every case it has ever filed or ever will file

and therefore seeks information protected by the deliberative process privilege, attorney client

privilege, and the attorney work product privilege.  The decision to seek damages for the victim

in this case or for any victim in any case is privileged and there are no grounds for Defendant to

obtain testimony on this decision.

 **Topic 17,** "All charges filed with the EEOC within the three years prior to the filing of

Charge 423-2007-02703 in which an oil or gas field worker charged that a hangman's noose was

displayed or referred to in the work area."   This topic is irrelevant to the issues in this case.  The

EEOC is barred by statute from disclosing the existence or content of charges which do not result in litigation.  As a practical matter, it would be impossible to know this answer without reviewing each and every one of the 230,000 charges filed prior to Mr. Swington's charge.  No deponent, even if several were designated, could ever be adequately prepared to answer questions about this volume of information. This request is unduly burdensome and not reasonably calculated to lead to the discovery of admissible or relevant evidence.  It is not a basis for permitting the EEOC to testify.

## V.      Defendant Will Not Be Prejudiced If this Motion is Granted

Defendant will not be prejudiced by granting the EEOC's motion.  The Commission will produce all non-privileged documents contained in EEOC administrative file that preceded this lawsuit. As recognized in Rule 26(b)(2)(C), the Court "must limit the frequency or extend of discovery otherwise allowed" when the discovery sought is:

(i)      unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)     the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the act, and the importance of the discovery in resolving the issues.

Each of these reasons is present in this case. Non-privileged documents and the information gathered by the Commission during its investigation of this charge will be produced and those documents speak for themselves.  Production of these documents should be sufficient. Any inquiry beyond that information on the face of those documents or beyond the facts of this case would necessarily implicate (1) information that is irrelevant to the main purpose of this litigation which is whether Defendant violated Title VII, and (2) information that is protected

from disclosure by the deliberate process privilege, attorney-client privilege, and the attorney work product privilege.

Regardless of the nature of the Commission's investigation and the basis for its Determination or the reasons that it chose to file this case, the parties are entitled to a trial *de novo* by the provisions of §706(f) (1) of Title VII of the Civil Rights Act of 1964, *as amended* [42 U.S.C. 2000e, *et seq*.].  Any possible defenses to the merits of Plaintiff's claim can be proved by Defendant without the testimony of EEOC employees.

The central issue in this case is Performance Drilling's harassment of Mr. Swington and the hostile work environment to which Mr. Swington was subjected. The topics Defendant on which Defendant seeks discovery and testimony will shed no light on this question.  Those issues are best answered by testimony from persons with knowledge of the events surrounding Mr. Swington's employment, as well as relevant documents.   The discovery objected to in this motion exceeds the permissible scope of discovery and must be stricken.

Respectfully submitted this the 14th day of March 2011.

C. EMANUEL SMITH (MS Bar # 7473)
Regional Attorney

JULIE BEAN (DC Bar #433292)
Supervisory Trial Attorney

/s/Ylda M. Kopka
YLDA MARISOL KOPKA (IL Bar # 6286627)
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205

20

Telephone: (205) 212-2062
Facsimile: (205) 212-2041

## CERTIFICATE OF SERVICE

I hereby certify that on 14th day of March, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will electronically send notification of the filing to all counsel of record:

/s/ Ylda Kopka
Attorney for the EEOC